CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 23-2992, 23-2993, 23-2994, 23-2995, 23-2996, 23-2997, 23-2998, 23-2999, 23-3000, 23-3001, 23-3002 & 23-3003

KEELY ROBERTS, *et al.*,

*Plaintiffs-Appellees*,

*v.*

SMITH & WESSON BRANDS, INC.; SMITH & WESSON SALES COMPANY; and SMITH & WESSON, INC.,

*Defendants-Appellants*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 22-cv-6186 *et al.* — **Steven C. Seeger**, *Judge*.

ARGUED APRIL 4, 2024 — DECIDED APRIL 8, 2024

Before EASTERBROOK, HAMILTON, and KOLAR, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. On July 4, 2022, Robert Eugene Crimo III opened fire on a parade in Highland Park, Illinois. Perched on a rooftop, Crimo sprayed 83 bullets into the crowd, killing seven people and wounding 48 others. He used a Smith & Wesson M&P15 rifle with three 30-round

Case: 1:22-cv-06181 Document #: 44 Filed: 04/30/24 Page 2 of 9 PageID #:501
Case: 23-2992   Document: 00714371562   Filed: 04/30/2024   Pages: 9

2 Nos. 23-2992 *et al*.

magazines. The M&P15 (for "Military & Police") is a derivative of Colt's AR-15 rifle, a cousin to the M16 machine gun.

Multiple consolidated suits, filed by some of the victims (or their estates), seek to recover damages under Illinois law from Crimo, his father (Robert Eugene Crimo Jr.), the gun shops where Crimo acquired the rifle, magazines, and ammunition, and the rifle's manufacturer and corporate affiliates. The legal theories advanced against Smith & Wesson rest on state tort law plus the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 to 510/7. The complaints assert (among other things) that Smith & Wesson should not have offered the M&P15 to civilians, because it is a machine gun reserved for police and military use under 18 U.S.C. §922(b)(4) and 26 U.S.C. §5845(b), and that if the civilian sale of the M&P15 is lawful the manufacturer still is liable because the weapon was advertised in a way that made it attractive to irresponsible persons (especially the young) seeking to do maximum damage in minimum time.

After the mass shooting, the State of Illinois and many municipalities enacted laws forbidding the sale of AR-15 style rifles and large-capacity magazines to civilians and regulating those already in private hands. Addressing a contention that those laws violate the Constitution's Second Amendment, we held that preliminary injunctive relief is inappropriate. *Bevis v. Naperville*, 85 F.4th 1175 (7th Cir. 2023). Proceedings on remand are ongoing. Those statutes and the Second Amendment do not matter to the current litigation.

The three Smith & Wesson entities filed notices of removal to federal court, asserting that the victims' claims arise under

Nos. 23-2992 *et al*.                                              3

federal law. 28 U.S.C. §1441. The gun shops consented to removal. But the two Crimos, though they are the principal asserted wrongdoers, neither filed their own notices of removal nor consented to Smith & Wesson's. This led the plaintiffs to move for remand, observing that 28 U.S.C. §1446(b)(2)(A) requires the consent of all defendants in order to remove under §1441(a). What's more, plaintiffs asserted, their suits arose exclusively under state law, for it is Illinois law that creates the claim for relief. See *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916).

Smith & Wesson offered two responses. First, it insisted that removal rests on its status as an entity "acting under" a federal officer for the purpose of 28 U.S.C. §1442(a)(1), a statute that allows removal whether or not other defendants elect to be in federal court. Second, it contended that removal is authorized by §1441(c) rather than §1441(a), and a removal under §1441(c) is exempt from the all-defendant-consent requirement. See 28 U.S.C. §1441(c)(2). Smith & Wesson recognized that federal defenses—whether the contention that the M&P15 is not a machine gun or the defense under the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901–03—do not allow removal, but it insisted that a federal issue is embedded in the state-law claim and so may be removed under the approach of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

The district judge was not persuaded by either line of argument and remanded the cases to state court. 2023 U.S. Dist. LEXIS 170943 (N.D. Ill. Sept. 25, 2023). Normally 28 U.S.C. §1447(d) blocks appellate review of remand orders, but §1447(d) has an exception for cases removed under §1442. If a defendant has invoked §1442, then an appeal presents a

4                                                         Nos. 23-2992 *et al*.

challenge to the remand order as a whole, permitting appellate review of theories in addition to §1442. See *BP p.l.c. v. Baltimore*, 141 S. Ct. 1532 (2021); *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 811 (7th Cir. 2015). We therefore must consider Smith & Wesson's arguments under both §1442 and §1441(c), and we do so in that order. (The gun shops have not joined Smith & Wesson's appeals. We do not discuss them further.)

*Watson v. Phillip Morris*, 551 U.S. 142 (2007); *Lu Junhong v. Boeing, supra*; and *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210 (7th Cir. 2022), all hold that being subject to federal regulation differs from acting under a federal agent for the purpose of 28 U.S.C. §1442(a)(1). *Watson* stated that "the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail" does not satisfy §1442. 551 U.S. at 145. Smith & Wesson is subject to a great deal of federal regulation, but it is hard to see any difference between its situation and that of tobacco producers in *Watson* or airframe manufacturers in *Lu Junhong*.

Smith & Wesson tells us that the Bureau of Alcohol, Tobacco, and Firearms (ATF) refers to manufacturers as its "partners" and to the system of regulation as a "partnership", but this snippet of bureaucratese does not change the nature of the relation between regulator and regulated. Congress and ATF set requirements; weapons manufacturers must dance to their tune. *Lu Junhong* held that a manufacturer that has been allowed to self-certify compliance with federal rules does not become a federal actor or agent; Smith & Wesson lacks any self-certification power and acts wholly as a private entity that must comply with federal (and state) regulation. ATF may listen respectfully to manufacturers' arguments, as judges listen respectfully to lawyers, but in the end the agency and the

Nos. 23-2992 *et al*. 5

judges make decisions without implying that the manufacturers or lawyers "act under" their auspices.

Federal regulations are pervasive. Airframe manufacturers (*Lu Junhong*), cigarette producers (*Watson*), and medical providers (*Martin*) must comply with innumerable rules and regulations. So must drug producers (regulated by the Food and Drug Administration), chicken farmers (regulated by the Department of Agriculture), auto manufacturers (regulated by several federal agencies), and makers of pesticides (regulated by the Environmental Protection Agency). The list is easy to extend. Chicken farmers whose birds lay eggs that contain salmonella, drug producers whose products are inadequately tested, auto manufacturers whose brake systems fail—these and many more are regularly sued in state court under state law. They may remove under 28 U.S.C. §1332 and §1441 if the parties are of diverse citizenship, but it is inconceivable that the existence of federal regulation would allow removal as §1442 is written—whether or not a given agency refers to the objects of regulation as its "partners."

*Watson* stated that a business might be "acting under" a federal officer if the officer commanded it or contracted with it to produce a particular item in a specified way. 551 U.S. at 153–54. Cf. *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). But Smith & Wesson does not contend that ATF directed it to make any AR-15 style weapon or compelled it to include in the M&P15 the rapid-fire features that Crimo's victims call wrongful. Nor does Smith & Wesson contend that ATF directed it to advertise the M&P15 in the way that it did. Those choices were Smith & Wesson's. That is some distance from "acting under" the ATF.

6 Nos. 23-2992 *et al*.

This brings us to §1441. Normally federal-question removal, including the embedded-federal-issue variety discussed in *Grable*, proceeds under §1441(a), which allows the removal of all suits over which federal courts have original jurisdiction. Claims arising under federal law support jurisdiction, see 28 U.S.C. §1331, so §1441(a) permits their removal—if all defendants consent. 28 U.S.C. §1446(b)(2)(A).

Smith & Wesson relies on §1441(c), a subsection that deals with multi-claim suits in which some claims arise under federal law and some under state law. Here's the language:

> (1) If a civil action includes—
>
>> (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and
>>
>> (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,
>
> the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).
>
> (2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

As Smith & Wesson sees things, the state suits present at least two "claims"—that the M&P15 is a machine gun and that it was improperly advertised. The first of these arises under federal law as *Grable* understands §1331, the argument goes, and so may be removed without the Crimos' consent, even if the advertising claim must be remanded under §1441(c)(2). The

Nos. 23-2992 *et al*.                                              7

district court rejected this contention because it thought that none of plaintiffs' theories comes within *Grable*. We reject it for a more fundamental reason: the state suits do not present multiple claims against Smith & Wesson.

Its invocation of §1441(c)(1) depends on a belief that each legal theory is a separate "claim". That belief is incorrect. As we explained in *St. Augustine School v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023):

> We [must honor] the distinction between a legal claim and a theory supporting relief (what the common law used to call a cause of action). A claim is the set of operative facts that produce an assertable right in court and create an entitlement to a remedy. A theory of relief is the vehicle for pursuing the claim; it may be based on any type of legal source, whether a constitution, statute, precedent, or administrative law. The specific theory dictates what the plaintiff needs to prove to prevail on a claim and what relief may be available. One lawsuit may raise multiple claims, and each claim may be supported by multiple theories.

The core claim in these suits is that Crimo killed and injured multiple persons. Crimo's father and the other defendants may bear secondary liability for their roles in facilitating his acts. But the complaint does not state separate "claims"—one for selling a machine gun and another for selling the M&P15 using inappropriate messages. Those are instead separate legal theories, which may imply separate methods of proof but do not multiply the number of claims. That lawyers often set out each legal theory in a separate "count" of a complaint does not multiply the number of claims.

One way to see this is to consider the law of claim preclusion (res judicata). For the moment forget about the claim against Crimo. Suppose that one of Crimo's victims had sued Smith & Wesson on an allegation that the M&P15 is a machine

gun, lost, and then filed a second suit contending that Smith & Wesson is liable for the way it advertised the M&P15. A court would not entertain the second suit. It would instead rule that the plaintiff must present all legal theories in one suit. See *Restatement (Second) of Judgments* §19. The court would add something along the lines of: "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Restatement (Second) of Judgments* §24(1). See also *Svendsen v. Pritzker*, 91 F.4th 876 (7th Cir. 2024) (discussing the law of claim splitting in Illinois).

The "transaction" at issue in the state suits is the mass shooting at the parade; Smith & Wesson's role was furnishing an M&P15 to Crimo through the gun shops (with his father's aid). Whether the legal wrong, if any, lies in the weapon's design or its promotional campaign does not multiply the number of transactions or allow sequential suits. This means that plaintiffs have only one "claim" against Smith & Wesson.

One final observation. Both this court in *Lu Junhong* and the Supreme Court in *BP v. Baltimore* recognized that attempting to remove under §1442 would be attractive to many defendants who sought to sidestep the need for all defendants' consent or wanted to obtain appellate review of any remand order. The Justices also saw that, when defendants yield to the incentive to misuse §1442 to get around §1447(d) and §1446(b)(2)(A), litigation will be delayed and become needlessly costly—other things that defendants may hope to achieve. Baltimore asked the Court to curtail those incentives by giving the statute a strained reading. The Justices replied

that setting policy is for Congress, not the judiciary, but added:

> Nor is it as if Congress has been blind to the City's concerns. As the City itself acknowledges, thanks to §1447(c) a district court may order a defendant to pay the plaintiff's costs and expenses (including attorney's fees) if it frivolously removes a case from state court. Additionally, the Federal Rules of Civil Procedure allow courts to sanction frivolous arguments made in virtually any context. Rules 11(b)–(c). Congress, thus, has already addressed the City's concerns in *other* statutes and rules—just not in §1447(d).

141 S. Ct. at 1542–43 (emphasis in original). See also *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (fee shifting is appropriate if removal lacked a reasonable basis). The district judge should consider whether Smith & Wesson must reimburse the plaintiffs' costs and fees occasioned by the unjustified removal and appeal.

The remand decision is affirmed. The case is remanded to the district court to consider acting under 28 U.S.C. §1447(c) and other sources of authority.